CASPER T. DORFMAN, administrator, vs. MURIEL HARRIET
ALLEN & others.[1]

Middlesex. January 7, 1982. — May 5, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Will*, Bequest to spouse of witness. *Devise and Legacy*, Construction
against intestacy, Spouse of witness. *Witness*, Will. *Constitutional
Law*, Equal protection of laws. *Due Process of Law*, Spouse of wit-
ness to will. *Probate Court*, Report.

The provision of G. L. c. 215, § 13, that a judge of the Probate Court
"may reserve and report the evidence and all questions of law therein"
to the Appeals Court, and which also permits the judge to report ques-
tions following an interlocutory judgment, decree, or order, did not,
in the absence of such a judgment, decree, or order, authorize a report
of two specific questions of law arising in this case. [138]

General Laws c. 191, § 2, as in effect prior to St. 1976, c. 515, § 5, which
voids bequests to spouses of necessary subscribing witnesses unless
there are three other subscribing witnesses to the will who are not simi-
larly benefited, does not violate the equal protection and due process
guaranties of the Federal and State Constitutions. [138-139]

Under a will leaving a residuary interest to the testator's two daughters
and their issue by right of representation, it was held, in circumstances
in which the daughters survived their father but in which one
daughter had her interest voided pursuant to G. L. c. 191, § 2, that
the language of the residuary clause demonstrated an intention that in-
testacy be avoided and that therefore the issue of the daughter whose
bequest was void were entitled to her share of the residue. [139-141]

CIVIL ACTION commenced in the Middlesex Division of the
Probate and Family Court Department on September 28,
1979.

Questions of law were reported to the Appeals Court by
*Leahy*, J. The Supreme Judicial Court ordered direct re-
view on its own initiative.

[1] Charles G. Herbits, Iris Chandler, Peter A. Allen and Richard L. Allen.

*Barbara Bruce Williams* (*Ronald F. Kehoe & Peter A. Allen* with her) for Muriel Harriet Allen & others.

*Keith L. Hughes* for Iris Chandler.

*Leonard A. Shamas* for Charles G. Herbits.

*Timothy J. Dacey*, for the plaintiff, submitted a brief.

O'CONNOR, J. We are presented with a will dispute and a constitutional challenge to G. L. c. 191, § 2, which voids bequests to spouses of necessary subscribing witnesses.

By a will executed on March 24, 1965, and a codicil executed on November 1, 1976, William Herbits left one-half of the residue of his estate to his wife on the condition that she survive him by thirty days, and "one-half (or all, if my said wife shall not survive me thirty days) in equal shares to my daughters, MURIEL HARRIET ALLEN and IRIS SHEILA CHANDLER, and their issue by right of representation." The codicil leaves $1,000 to William's son, Charles, and "intentionally [makes] no further provision for him." Both instruments were subscribed to by three witnesses. In each instance one of these was Muriel's husband. William died on December 28, 1976. His wife did not survive him by thirty days. At the time of William's death, Muriel had two issue, Peter A. Allen and Richard L. Allen.

General Laws c. 191, § 2, as amended by St. 1920, c. 2, was in effect on the dates the will and codicil were executed and William died, and governs both instruments. It provided, in pertinent part, that "a beneficial devise or legacy to a subscribing witness or to the husband or wife of such witness shall be void unless there are three[2] other subscribing witnesses to the will who are not similarly benefited thereunder." Section 2 voids the residuary bequest to Muriel. *Rosenbloom* v. *Kokofsky*, 373 Mass. 778 (1977).

The Probate and Family Court reported two questions pursuant to G. L. c. 215, § 13. The first question is whether

---

[2] Statute 1976, c. 515, § 5, by § 35 made effective July 1, 1978, amended G. L. c. 191, § 2, by substituting "two" for "three." By St. 1977, c. 76, § 2, the effective date of the amendment was advanced to January 1, 1978.

G. L. c. 191, § 2, is constitutional. Muriel and her children, Peter and Richard, argue that § 2 violates the equal protection and due process guarantees of the Federal and State Constitutions; Iris, Charles, and the Attorney General as amicus curiae, disagree. No other constitutional question is argued. The second question is whether, if § 2 is constitutional, the legacy to Muriel passes by the law of intestate succession, so that Charles, Iris, and Muriel are each entitled to one third, or by the will, to Peter and Richard, Muriel's children. G. L. c. 190, § 3.

1. *Procedure.* The Probate and Family Court judge's reservation and report is procedurally deficient. General Laws c. 215, § 13, as amended through St. 1975, c. 400, § 59, pursuant to which he reported the questions, states that "[a] judge of the probate court by whom a case or matter is heard for final determination may reserve and report the evidence and all questions of law therein for consideration of the appeals court." It also permits him to report questions following an interlocutory judgment, decree, or order. However, in the absence of a judgment, decree, or order, as here, § 13 "does not authorize a report of a part of a case or of specific questions of law arising therein. The report must be of the entire case and in such form that this court can enter or order the entry of a final decree disposing of the case." *Curran, petitioner*, 314 Mass. 91, 94 (1943). *Matter of Jones*, 379 Mass. 826, 828 n.2 (1980).

The trial judge reported two specific questions of law. He did not report the entire case. Thus, his report must be discharged. However, because the issues have been raised and briefed, we will state our views. *Matter of Moe*, 385 Mass. 555, 557 n.2 (1982). *Matter of Jones, supra.* See *Maldonado, petitioner*, 364 Mass. 359, 366 (1973) (defective report under G. L. c. 231, § 111).

2. *Constitutionality.* Muriel contends that § 2 differentiates between two classes of persons (spouses and all others) without a rational basis, deprives her of property without

a rational basis, and creates an irrebutable presumption[3] that is not necessarily true.

Section 2 creates a class of spouses of necessary subscribing witnesses and voids bequests to members of that class. The provision does not implicate a suspect class or a fundamental interest. In this context, Muriel's constitutional challenges, which derive from the State and Federal equal protection and due process guarantees, give rise to essentially the same inquiry: whether the statute is rationally related to a permissible legislative objective. If it is, the statute's classification survives equal protection attack, and its irrebutable presumption survives due process attack. *Weinberger* v. *Salfi*, 422 U.S. 749, 768-769, 776-777 (1975) (irrebutable presumption analysis under the Federal Constitution). *Dandridge* v. *Williams*, 397 U.S. 471, 485 (1970) (Federal equal protection). *Pinnick* v. *Cleary*, 360 Mass. 1, 14 & n.8 (1971) (Federal and State due process). *McQuade* v. *New York Cent. R.R.*, 320 Mass. 35, 38 (1946) (Federal and State equal protection). See L. Tribe, American Constitutional Law § 16-32 (1978).

Section 2 advances at least two permissible objectives: reduction of the potential for perjury and protection of testators from overreaching or coercion by the subscribing witnesses who, through their spouses, will benefit from the testator's bounty. Voiding the spouse's interest is certainly a rational way of achieving these ends. That the statute does not void bequests to other relatives of a necessary witness, such as a child or parent, does not render it invalid. "[A] State [need not] choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge, supra* at 486-487. Section 2 is therefore constitutional.

3. *Distribution.* While § 2 voids Muriel's residuary interest, the statute is silent as to where that bequest devolves. The general rule is that a void residuary bequest to a legatee

---

[3] The alleged presumption is that a necessary subscribing witness to a will will overreach the testator where the spouse of the witness is a legatee.

who is not a member of a donee class passes according to the law of intestate succession. *Derby* v. *Derby*, 252 Mass. 176 (1925). *Lyman* v. *Coolidge*, 176 Mass. 7 (1900). *Powers* v. *Codwise*, 172 Mass. 425 (1899). *Sohier* v. *Inches*, 12 Gray 385 (1859). However, where the testator has created a gift over, the bequest passes according to the terms of that gift. See *Gustafson* v. *Svenson*, 373 Mass. 273 (1977); *Leary* v. *Liberty Trust Co.*, 272 Mass. 1 (1930).

William left the residue to Muriel and Iris "and their issue by right of representation." "Right of representation" is defined by statute to involve nonsurvival. G. L. c. 190, § 8. William clearly created a gift over to Muriel's children in the event that Muriel did not survive him. The question is whether the will demonstrates William's intention to create a gift over to Muriel's children in the event that the gift to Muriel fails even though she survives him. It is the court's duty to effectuate the testator's intent unless some positive rule of law forbids. *Old Colony Trust Co.* v. *Treadwell*, 312 Mass. 214, 217 (1942). Although it is apparent that William did not contemplate failure of his bequest to Muriel except by her predeceasing him, we believe that the language of the residuary clause demonstrates his intention that Muriel's issue should be substituted for Muriel if she should be unable to take the bequest. It is apparent from William's attempted disposition of all his property that he desired to avoid intestacy. The result we reach is consistent with the settled principle that "a construction of a will resulting in intestacy is not to be adopted unless plainly required." *Lyman* v. *Sohier*, 266 Mass. 4, 8 (1929).

Our conclusion resembles that of the Appeals Court in *South Shore Nat'l Bank* v. *Berman*, 1 Mass. App. Ct. 9 (1972). There, the court avoided intestacy by referring to the testatrix's intent as manifested by the will as a whole, though the will was silent regarding the circumstances that actually occurred. The will established a trust for the decedent's husband for life "if he survives me" with the remainder upon his death to specific named nieces and nephews. The husband predeceased the testatrix, a contingency the

will failed to address. The court ruled that the named residuary legatees would take, not the decedent's heirs at law.

Because the will provides for a gift over to Muriel's issue, her issue alive at William's death are entitled to her share of the residue. See *Hubbard* v. *Lloyd*, 6 Cush. 522 (1850).

*Report discharged.*